# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>              Plaintiff,<br><br>v.<br><br>JOHN MARTURANO, an individual,<br>d/b/a   J & T COMPUTERS & PARTS<br><br><br>              Defendant. | 1:06cv1747 OWW GSA<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND MOTION FOR PERMANENT INJUNCTION<br><br>(Document 60) |

Plaintiff, Microsoft Corporation ("Microsoft") filed the instant Motion for Default Judgment and Motion for Permanent Injunction on April 16, 2009. No oppositions to the motions were filed. After reviewing the motions, the court determined that the matter is suitable for decision without oral argument pursuant to Local Rule 78-230 (c) and (h). The hearing on May 22, 2009, was vacated. Having considered all materials submitted, it is recommended that Plaintiff's motions be GRANTED.

**FACTUAL BACKGROUND**

Plaintiff filed this copyright and trademark infringement action against Defendant, John Marturano, an individual, d/b/a J & T Computers and Parts ("Defendant") on December 4, 2006. The action arises from Defendant's alleged distribution of counterfeit and infringing Microsoft software and components. Microsoft alleges causes of action for (1) Copyright Infringement; (2)

1  Federal Trademark Infringement; (3) False Designation of Origin; False Description and False
2  Representation; (4) Common Law Unfair Competition; (5) Imposition of a Constructive Trust;
3  and (6) Accounting.

4  Microsoft file a complaint on December 4, 2006, to recover damages arising from Defendant's alleged distribution of infringing Microsoft Software. Doc. 2. Microsoft develops, markets, distributes and licenses computer software. Complaint at ¶ 1. The complaint alleges that Microsoft has developed several software programs, including but not limited to, Microsoft Windows XP professional ("Windows XP Pro"). Id. at ¶ 8. Microsoft packages and distributes its software programs together with associated proprietary materials, such as user's guides, manuals, end-user license agreements ("EULAs"), and other items. Id. at ¶ 7. Microsoft alleges it holds valid copyrights in its software programs that are duly and properly registered with the United States Copyright Office. Id. at 8. Microsoft also alleges it has duly and properly registered a number of trademarks and service marks in the United States Patent and Trademark Office.

The complaint alleges that Defendant is engaging in the business of installing and distributing computer software, including purported Microsoft software. Id. at ¶ 2. Microsoft notified Defendant by letter dated April 17, 2002, that he had distributed counterfeit Microsoft software. Complaint at ¶ 11. Microsoft requested that Defendant stop the infringing activity. Id. In or about August 2006, Defendant distributed counterfeit and infringing Windows XP Pro to an investigator.[1] Id. at ¶ 12. Microsoft alleges that this willful infringement was not an isolated incident, but rather is part of a continuous and ongoing business practice of Defendant in blatant violation of Microsoft's copyrights and trademarks. Id. at ¶ 13. Specifically, Defendant has been and continues to be involved in advertising, marketing, installing, and/or distributing infringing copies of Microsoft's software to unidentified persons or entities. Id. Plaintiff further alleges that the wrongful conduct includes the advertising, marketing, installing, and/or distribution of

---

[1] Windows XP Pro is an operating system for desktop and laptop systems. It preforms a number of computer-related operations including, but not limited to, providing support for various applications and allowing remote access to data and applications stored on Windows XP Pro desktops from network connections.

"infringing materials," specifically, reproductions, copies, or colorable imitations of the Microsoft copyrighted software and/or the Microsoft trademarks, logos, and service mark of Window XP Pro. Id. at 14. Finally, Microsoft alleges that Defendant personally participated in and/or had the right and ability to direct and control the wrongful conduct alleged in the complaint, and derived direct financial benefit from the wrongful conduct. Id. at ¶ 3.

# **PROCEDURAL BACKGROUND**

On December 22, 2006, Defendant was served with the summons and complaint. Defendant, appearing pro per, filed an answer to the complaint on January 8, 2007. Doc. 8. Although Defendant filed an answer, he failed to inform Microsoft and the Court of his current address and telephone number. After several unsuccessful attempts were made to contact Defendant by both the Court and by Plaintiff for approximately a five month period, Plaintiff filed a Motion to Strike Defendant's Answer and Enter Default against him on November 2, 2007. Docs. 18, 19, & 20. On December 27, 2007, this Court issued Findings and Recommendations recommending that Plaintiff's motion be granted. Doc. 30.[2] These Findings and Recommendations were adopted by United States District Court Judge Oliver W. Wanger on February 2, 2008. Doc. 35. Defendant's answer was stricken and default was entered on February 6, 2008. Doc. 36.

On March 11, 2008, Microsoft filed Motions for Default Judgment and Permanent Injunction against Defendant. Doc. 39. Defendant did not file any opposition to the motions, however, he did appear at a hearing on April 11, 2008. This court denied Microsoft's Motion for Default Judgment without prejudice and informed Defendant that he could file a motion to set aside the entry of default. Doc. 42. On May 8, 2008, Defendant, appearing pro se, filed a Motion to Set Aside the Entry of Default. Doc. 44. On June 27, 2008, the Court held a hearing and thereafter on July 1, 2008, granted Defendant's motion. The Court vacated the Findings and Recommendations issued on December 27, 2007, recommending that Defendant's answer be stricken and default be entered . Doc. 47. In the Order Setting Aside Entry of Default,

---

[2] The complete history of Defendant's failure to provide the court with his address is outlined in this Findings and Recommendation.

3

Defendant was advised as follows, "**... future failures to participate in this litigation will be looked upon with disfavor. Defendant shall keep the court apprised of his address, attend all hearings, and respond to all pleadings when appropriate. Failure to do so may result in default or default judgment being entered against him.**" Doc. 47 at pg. 7. (Emphasis in original).

On July 24, 2008, a scheduling conference was held before the Honorable Oliver W. Wanger and both parties appeared. Doc. 51. The Scheduling Conference Order required that all initial disclosures be made by August 25, 2008, and that all discovery by completed by January 30, 2009. Id.

Microsoft did not receive Defendant's initial disclosures. Similarly, Defendant did not respond to Microsoft's requests for interrogatories and requests for production of documents even after Plaintiff had made numerous attempts to contact Defendant. Defendant also did not appear for his deposition and he failed to attend a settlement conference as ordered by this Court.

As a result, on February 10, 2009, Microsoft filed a Motion to Strike Defendant's Answer and Enter Default. Doc. 52. Defendant did not file an opposition to the motion, however, he did attend a hearing held on March 6, 2009. On March 12, 2009, this Court granted Microsoft's motion. Doc. 57. Defendant's answer was stricken a second time and default was entered against him. Id. On March 11, 2009, Microsoft filed the instant Motion for Default Judgment and Motion for Permanent Injunction. Microsoft seeks $360,778.60 in damages as follows:

1. $30,000 in statutory damages against Defendant under the Copyright Act;
2. $300,000 in statutory damages against Defendant under the Lanham Act;
3. Permanent injunctive relief;
4. Attorney's fees in the amount of $29,696.40; and
5. Costs in the amount of $1,082.20.

## **LEGAL STANDARD**

Microsoft moves for entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), which provides that judgment may be entered:

(2) By the Court. In all other cases, the party must apply to the court for default judgment. A default judgment may be entered against an infant or incompetent person only if represented by a general guardian, committee, conservator, or other like fiduciary who has appeared. If the party against whom default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing. The court may conduct hearings or make referrals - preserving any federal statutory right to a jury trial - when, to enter or effectuate judgment, it needs to : (A) conduct an account; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.

Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true. Dundee Cement Co. v. Highway Pipe & Concrete Products, Inc. 722 F.2d 1319, 1323 (7th Cir. 1983); TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-918 (9th Cir. 1987). Thus, "[a]t the time of entry of default, the facts alleged by the plaintiff in the complaint are deemed admitted." 10 J. Moore, Moore's Federal Practice §55.11 (3d ed. 2000). While the allegations related to liability are true, the amount of damages suffered are ordinary not. Dundee Cement Co. v. Highway Pipe & Concrete Products, Inc. 722 F.2d at 1323. However, a judgment by default may be entered without a hearing on damages if the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits. Id. In this case, Plaintiff is seeking statutory damages and has submitted an affidavit related to its request for attorney's fees and costs. Therefore, a damages hearing is not necessary.

As previously stated, Defendant was served with the complaint on December 22, 2006. Defendant is not an infant or incompetent person, and is not in the military service or otherwise exempted under the Servicemembers Civil Relief Act (formerly, the Soldiers' and Sailor's Relief Act of 1940). 50 U.S.C. app. § 521(b)(4); Declaration of Jennifer N. Chiarelli dated April 11, 2009 ("Chiarelli Decl." at ¶ 3); Doc. 60-3. Plaintiff also served Defendant with the instant motions on April 16, 2009. Doc. 60-6.

**ANALYSIS**

A.     *The Copyright Act*

The Copyright Act gives the copyright owner the exclusive right to reproduce a copyrighted work and to distribute copies of the work. See 17 U.S.C. § 106(1)-(3). In a copyright

5

action, "to establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991).

The registration certificate, which is attached to the complaint, is prima facie evidence of Microsoft's ownership of valid copyrights. Doc. 2 at Ex. 1; Microsoft Corp v. McGee, 490 F. Supp. 2d. 874, 878 (S.D. Ohio, 2007); See also 17 U.S.C. § 410(c). Therefore, Microsoft has proven ownership of the copyright for Microsoft Windows XP Pro, TX-407-055, and Plaintiff has established the first element of infringement.

Microsoft alleges that Defendant has copied these copyrighted materials and distributed the infringing materials in the United States without approval or authorization from Microsoft. Complaint, at ¶ 20. Because the Court must deem these allegations as being admitted, Microsoft has established the second element of copyright infringement. Accordingly, the court finds that Defendant infringed on the copyright right listed above in violation of the Copyright Act.

B.  *The Lanham Act*

Microsoft brings two claims under the Lanham Act. The first claim is for trademark infringement under the Act, which provides:

> (1) Any person who shall, without the consent of the registrant-
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.
>
> 15 U.S.C. § 1114(1).

Microsoft's second claim under the Lanham Act is for false designation of origin, false or misleading description, and false or misleading representation under 15 U.S.C. § 1125(a), which provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
>
> 15 U.S.C. § 1125(a)(1).

In the complaint, Microsoft alleges that the infringing materials Defendant has and continues to use, offer, advertise, market or distribute are likely to cause confusion, mistake or deception as to their source, origin or authenticity. Complaint at ¶ 30. Microsoft also alleges that Defendant's activities are likely to lead the public to conclude, incorrectly, that the infringing materials that Defendant is advertising, marketing, installing, or distributing originate with or are authorized by Microsoft, to the damage and harm of Microsoft, its licensees, and the public. Complaint at ¶ 31. Deeming these allegations as admitted, the Court finds that Microsoft has established that Defendant infringed the following trademarks: 1,200,236 ("MICROSOFT"); 1,256,083 ("MICROSOFT"); 1,872,264 ("WINDOWS"); and 2,744,843 (COLORED FLAG DESIGN). The court also finds that Defendant's acts constituted false designation of origin, false or misleading description, and false or misleading representation in violation of the Lanham Act.

C.   *Wilfullness*

A infringement is willful under the Copyright Act if the defendant had knowledge that his conduct was infringing, or the defendant acted with reckless disregard for the copyright holder's

rights.  See, Sega Entertainment v. MAPHIA, 948 F. Supp. 923, 936 (N.D. Cal 1996); See also, Knitwaves, Inc. V. Lollytogs Ltd., 71 F. 3d 996, 1010-11 (2d. Cir. 1995) (Knowledge of infringement may be constructive rather than actual; that is, "it need not be proven directly but may be inferred form the defendant's conduct ... [R]eckless disregard of the copyright holder's rights ... suffices...").  Moreover, where the defendant has defaulted, willful copyright infringement is proven.  Capital Records, Inc., v. Zahn, 2007 WL 542816, *3 (M.D. Tenn. Feb. 16, 2007), citing Peer Intern. Corp., v. Max Music & Entertainment, Inc., 2004 WL 1542253 (S.D.N.Y. 2004).

Under the Lanham Act, infringement is willful, and thus triggers the enhanced statutory damages limit, if the defendant "had knowledge that its actions constitute an infringement." Ford Motor Co. v. Cross, 441 F.Supp.2d 837, 852 (E.D. Mich.2006), quoting N.A.S. Import, Corp. v. Chenson Enterprises., Inc., 968 F.2d 250, 252 (2nd Cir.1992).  A defendant's continued infringement after notice of his wrongdoing is probative evidence of willfulness. Id. citing Int'l Korwin Corp. v. Kowalczyk, 855 F.2d 375, 380-81 (7th Cir.1988) (willfulness may be demonstrated where infringer is provided notice of its infringing conduct); Arista Records, Inc. v. Beker Enterprises, Inc., 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (finding willfulness when plaintiffs repeatedly contacted Defendants regarding their infringing conduct and Defendants ignored Plaintiff's communications); Louis Vuitton Malletier & Oakley Inc., v. Veit, 211 F.Supp.2d 567, 583 (E.D.Pa. 2002) ("Willfulness can be inferred by the fact that a defendant continued infringing behavior after being given notice.").

Willfulness can also be inferred from a defendant's failure to defend.  Philip Morris USA, Inc., v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003) (holding that defendant wilfully infringed plaintiff's trademark on plaintiff's allegations of willful infringement and defendant's failure to comply with the judicial process or to participate in any way in the present litigation.); Tiffany Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) ("By virtue of the default, the [defaulting party's] infringement is deemed willful.").

Microsoft has submitted evidence that it sent a letter to Defendant in 2002 explaining that his activities were unlawful. Nevertheless, in 2006, Defendant subsequently continued to distribute infringing software, knowing such acts were unlawful. Therefore, the court finds that Defendant's violations of the Copyright and Lanham Acts were willful.

D. *Entry of Default Judgment*.

Factors which may be considered by courts in exercising discretion regarding the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-1472 (9th Cir. 1986).

The court has evaluated the factors listed above and finds that the facts in this case weigh heavily in favor of granting default judgment. First, Microsoft would suffer prejudice if the court does not enter default judgment because Microsoft would have no other means of recovery. Second, as outlined above, Microsoft's complaint properly alleges the necessary elements of each cause of action which satisfies the second and third factors; the merits of the substantive claim, and the sufficiency of the complaint. The fourth factor is also met since there is a significant amount of money at stake in this action in the form of damages, which as discussed below, are authorized under federal law.

The fifth factor, the possibility of a dispute concerning the material facts is also met. The Court notes that Defendant is proceeding pro se and as such, the court has construed his pleadings liberally and held him to a less stringent standard that formal pleadings drafted by lawyers. See, Haines v. Kerner, 404 U.S. 519, 520 (1972); Balisteri v. Pacifica Police Department, 901 F. 2d 696, 699 (9th Cir. 1990) (pro se pleadings are liberally construed particularly where civil rights claims are involved). However, pro se litigants must follow the same rules of procedure that govern other litigants. King v. Atiyeh, 814 F. 2d 565, 567 (9th Cir. 1987).

Although Defendant initially answered the complaint and denied the allegations, he has not participated in this litigation. Initially, Defendant failed to keep the Court apprised of his address. After this Court struck Defendant's answer and default was entered, this Court gave Defendant another opportunity to defend this action by setting aside the default. Rather than take advantage of this opportunity, Defendant did not participate in the discovery process after repeated attempts were made by Plaintiff to allow him to do so. Defendant did not provide his initial disclosures to Plaintiff, nor did he answer interrogatories or requests for production of documents. Defendant also failed to attend his deposition and a settlement conference as ordered by this Court. After default was entered a second time, Defendant never filed a motion to set aside the entry of default and did not file any oppositions to the instant motions. Defendant engaged in these acts even after being informed by the Court that failure to participate in this litigation may result in default judgment. Therefore, Defendant has repeatedly demonstrated that he is not in a position to defend the action, or to dispute material facts.

Given Defendant's actions, the sixth factor is also satisfied since there is also no evidence that default resulted from excusable neglect. Finally, with regard to the last factor, although cases should be decided on the merits when reasonably possible, such preference alone is not dispositive. PepsiCo Inc., v. California Security Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Defendant's failure to respond and defend this action, renders a decision on the merits impractical.

E.  *Statutory Damages*

Microsoft requests statutory damages under both the Copyright Act and Lanham Act. 15 U.S.C. §§ 1117(c), 1125(c), and 504(c)(1) & (c)(2). The Copyright Act authorizes statutory damages of up to $30,000 per copyright infringement or enhanced damages up to $150,000 per copyright if the infringement is willful. 17 U.S.C. § 504(c). Similarly, statutory damages for trademark infringement are available for up to $200,000 per counterfeit trademark infringed, regardless of willfulness, and enhanced damages up to $2,000,000 per mark if the infringement is

willful. 15 U.S.C. § 1117 (c).³ The Court has wide discretion to determine the amount of statutory damages to be awarded, Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1336 (9th Cir. 1990), and can award statutory damages under both the Lanham Act and Copyright Act even where the infringement was caused by a single act. Nintendo of America, Inc. v. Dragon Pacific Int'l, 40 F.3d 1007, 1011 (9th Cir. 1994).

Here, Microsoft believes that Defendant's conduct was willful, based on his failure to defend and his failure to stop the infringement after the April 17, 2002 letter. Chiarelli Decl. at Ex. A, Doc. 60-3. However, Microsoft requests the maximum amount of statutory damages available for *non*-willful infringement rather than willful infringement. It seeks $100,000 for three of four of its trademarks and service marks at issue, and $30,000 for its one copyright at issue, for a total of $330,000.⁴

Having read and considered the declarations, pleadings, and exhibits in the present motion, the court finds that the requested damages is reasonable and within the range of award for damages in factually similar cases. See, e.g. Microsoft v. McGee, 490 F. Supp. 2d at 874 (after default, awarding statutory damages of $100,000 per five trademarks at issue and $30,000 per seven copyrights at issue, for a total of $710,000); Microsoft v. Sellers, 411 F. Supp. 2d 913, 921-922 (E.D. Tenn. 2006) (awarding the maximum amount of statutory damages for non-willful infringement in the amount of $460,000 on summary judgment.); Microsoft Corp.v. Compusource Distributors, Inc., 115 F. Supp.2d 800 (E.D. Mich. 2000) (awarding $50,000 for each of its eight trademarks at issue and $15,000 for each of its nine copyrights at issue for a total

---

³ Since the filing of this complaint, recent amendments to section 1117 (c) increase the statutory damages amounts to $200,000 per counterfeit infringed, regardless of willfulness, and $2,000,000 per mark if the infringement is willful. 15 U.S.C. § 1117 (c). (October 13, 2008). Microsoft has requested damages pursuant to the older statutory scheme which allowed for statutory damages of $100,000 per counterfeit infringed regardless of willfulness and $1,000,000.00 if the infringement is willful.

⁴ The four trademarks at issue are for the following : 1,200,236 ("MICROSOFT"); 1,256,083 ("MICROSOFT"); 1,872,264 ("WINDOWS"); and 2,744,843 (COLORED FLAG DESIGN). Complaint, ¶ 9 & Exhibit 2-5. For the purposes of calculating statutory damages, however, Microsoft seeks damages "per counterfeit mark." See, 15 U.S.C. § 1117(c). Of these four registrations, the mark "MICROSOFT" is registered under two different classifications of goods and Microsoft seeks damages only once for these marks. Thus, there are three marks for which Microsoft seeks damages. The copyright at issue is TX 5-407-005 ("Windows XP Professional").

award of $535,000).   The court therefore recommends statutory damages in the total amount of $330,000.

F.      *Injunctive Relief*

Microsoft also requests that this Court issue a permanent injunction based on the likelihood that Defendant will continue with his infringement.  The Copyright Act and the Lanham Act both permit the issuance of permanent injunctions to prevent future violations.  17 U.S.C. § 502(a); 15 U.S.C. § 1116(a).  A plaintiff seeking a permanent injunction must satisfy a the four part test before a court may grant such relief : 1) that it has suffered irreparable injury; 2) there is no adequate remedy at law; 3) that considering the balance of hardships between the plaintiff and the defendant, a remedy equity is warranted; and 4) that the public interest would not be disserved by a permanent injunction.  eBay Inc., v. MercExchange, LLC, 547 U.S. 388, 392-393 (2006) (explaining that the Supreme Court has rejected the notion an injunction automatically follows a determination that a copyright has been infringed, but instead equitable considerations should rule).

With regard to the first factor, "copyright infringement is presumed to give rise to irreparable injury."  Universal City Studio v. Reimerdes, 82 F. Supp. 2d 211, 215 (S.D.N.Y. 2000).  Moreover, where Defendant's acts are willful, as is the case here, Plaintiff need not introduce evidence of a threat of future harm. See, Polo Fashions, Inc. v. Dick Bruhm, Inc., 793 F. 2d 1132, 1135-1136 (9th Cir. 1986); Nat'l Football League v. McBee & Burno's Inc., 792 F. 2d 726, 729 (8th Cir. 1986), citing Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 451 (1984) (intentional and unauthorized use of Microsoft's copyrights is for commercial gain, a likelihood of future harm is presumed).  Finally, Microsoft has established that Defendant's acts will cause confusion, mistake or deception as to the products source, origin or authenticity which clearly give rise to irreparable injury.

The second factor, that there is no adequate remedy at law is also met.  Given the nature of Defendant's duplication of Plaintiff's product, there is continued threat that Defendant will continue to engage in this unlawful conduct.   Plaintiff's injury cannot be remedied by monetary

compensation alone. As such, an injunction is the only remedy available to limit the potential of future injury.

The third factor, the balance of hardships, is also satisfied. The court perceives no harm to Defendant since an injunction were merely require Defendant to comply with the Copyright and Lanham Acts. Capitol Records v. Zahn, 2007 WL 542816, at *4 (M.D. Tenn. 2007). Similarly, the fourth factor, that the public interest would not be disserved by a permanent injunction is also met. "Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." Apple Computer, Inc., v. Franklin Computer Corp., 714 F. 2d 1240, 1255 (3rd Cir. 1983). Thus, the court finds that Plaintiff is entitled to a permanent injunction.

G. *Attorney's Fees and Costs*

Finally, Microsoft requests that this Court award attorney's fees and costs in the amount of $29,696.40; and costs in the amount of $1,082.20 pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117(a). The Copyright Act authorizes an award of costs and attorneys fees to the prevailing party and are awarded pursuant to the court's discretion. Fogerty v. Fantasy, Inc. 510 U.S. 517, 517 (1994). The Lanham Act authorizes an award of attorney fees to the prevailing party in exceptional cases. 15 U.S.C. § 1117(a). The Ninth Circuit has held that "[w]hile the term exceptional is not defined in the statute, attorney's fees are available in infringement cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful." Rio Properties, Inc., v. Rio International, Interlink, 284 F. 3d 1007, 1023 (9th Cir. 2002) (citing Playboy Enters., inc. v. Baccarat Clothing Co., 692 F. 2d 1272, 1276 (9th Cir. 2002). As stated above, the Court concluded that Defendant's actions were willful. As the prevailing party, Microsoft is entitled to such relief. The Court has reviewed the itemized list of attorney's fees and costs submitted by Plaintiff's counsel. The requests are reasonable especially in light of Defendant's lack of participation in this litigation. Chiarelli Decl., Doc. 60-3.

///

## **RECOMMENDATIONS**

For the reasons discussed above, the Court RECOMMENDS that:

1. Microsoft's Motion for Default Judgment in favor of Microsoft and against Defendant be GRANTED;

2. Microsoft be AWARDED statutory damages in the total amount of $330,000 as outlined above;

3. Microsoft be AWARDED reasonable attorney's fees in the amount of $ 29,696.40;

4. Microsoft be AWARDED costs in the amount of $1,082.20; and

5. Microsoft be GRANTED injunctive relief in the form of the following permanent injunction:

Defendant John Marturano, an individual, d/b/a J & T COMPUTERS & PARTS, and his agents, servants, employees, representatives, successors, and assigns, and all those acting in concert or participation with him shall be, and hereby are PERMANENTLY ENJOINED and restrained from:

(a) imitating, copying, or making an other counterfeit distribution of software programs, components, end user license ageements ("EULAs"), Certificates of Authenticity ("COAs") or items protected by Microsoft's registered trademarks and service marks, including, but not limited to, the following Trademark and/or Service Mark Registration Numbers :

(1) 1,200,236 ("MICROSOFT");

(2) 1,256,083 ("MICROSOFT");

(3) 1,872,264 ("WINDOWS");

(4) 2,744,843 (COLORED FLAG DESIGN);

or the software programs, components, EULAs, COAs, items or things protected by the following Certificate of Copyright Registration Number :

1             (i)    TX-5-407-055 ("Windows XP Professional"); or any other works now or hereafter protected by any of Microsoft's trademarks or copyrights;

(b) manufacturing, assembling, producing, distributing offering for distribution, circulating, selling offering for sale, advertising, importing, promoting, or displaying any software programs, component, EULA, COA, item or thing bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of any of Microsoft's registered trademarks or service mark, including, but not limited to, the Trademark and Service Mark Registration Nos. Listed in Paragraph (a) above;

(c) using any simulation, reproduction, counterfeit, copy, or colorable imitation of Microsoft's registered trademarks or service mark including, but not limited to, the Trademark and Service Mark Registration Nos. listed in paragraph (a) above, in connection with the manufacture, distribution, offering for distribution, sale, offering for sale, advertisement, promotion, or display of any software, component, EULA, COA, item or thing not authorized or licensed by Microsoft;

(d) using any false designation of origin or false description which can or is likely to lead the trade or public or individuals erroneously to believe that any software, component, EULA, COA, item, or thing has been manufactured, produced, distributed, offered for distribution, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by or for Microsoft, when such is no true in fact;

(e) using the names, logos, or other variations thereof of any of Microsoft's copyrights and/or trademark-protected software programs in any of Defendant's trade names;

(f) engaging in any other activity constituting an infringement of any of Microsoft's trademarks, service mark and/or copyrights, or of Microsoft's rights in, or right to

1         use or to exploit these trademarks, service mark, and/or copyrights, or constituting
2         any dilution of Microsoft's name, reputation, or goodwill; and
3    (g)    assisting, aiding, or abetting any other person or business entity in engaging in or
4         performing any of the activities referred to in paragraphs (a) through (f) above.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 27, 2009**            /s/ **Gary S. Austin**
                                                   UNITED STATES MAGISTRATE JUDGE